22-5072. Counsel for appellant, if you would make your appearance and then proceed. Thank you, Your Honor. My name is Howard Hinkes. I'm a federal public defender and I represent Christopher Guinn. The district court admitted under Rule 413 not just proof of sexual assault that the rule allows, but also proof that Mr. Guinn mistreated his former girlfriend in other ways. The improper admission of this evidence of non-sexual mistreatment under Rule 13 allowed its use for propensity and the prosecution urged the jury to use it in that way. This court should vacate Mr. Guinn's convictions and remand for a new trial. Rule 413 allows a court... Well, before we get there, can we talk about the standard of review? Certainly. I mean, this is plain error, isn't it? Well, I think it is preserved by the district court's order in which the court recognized what the Rule 413 evidence was, applied the Denali standards that this court has identified for determining first whether the evidence meets the rule, although admittedly in that portion of the opinion did not speak about the non-sexual mistreatment, but it spoke about it before that point and it spoke about it after, saying that it was comparing the prior assaults and the current assault and looking for similarities, and in that it talked about the non-sexual mistreatment. When we look on whether a district court passed on an issue, which is your argument here, it has to have been brought to the attention of the district court and the district court has to have explicitly ruled on the issue, and I don't see anything here where the district court would have been on notice that there was an argument that the evidence went beyond what Rule 413 would allow. Well, it doesn't actually require that the defendant raise the issue because that's what ordinarily preserves an issue. So if Mr. Gwynne had raised the issue initially, that would preserve it regardless of what the district court did. But it has to have explicitly passed on it, right? So this court has said when a district court explicitly rules on and resolves something, that gets around the forfeiture that would otherwise apply, but what it's really looking for is an application of relevant law to the relevant facts, and the court here knew what the relevant facts were. It spoke about it before finale factors and after, and it was very, it marched through all of this court's standards. Let me stop you there, Mr. Pincus. I mean, I understand that the defendant doesn't have to raise it, but the question is, does the court, it would seem to me the question is does the court know there's even an issue? I mean, if I am issuing an order about Rule 14 or 413, and I just sort of lay out what I thought the facts were and I say, you know, here's the law, here are the facts, this is what you can put in, if I had no reason to know that there might be some concern about certain facts, I mean, why is that preserved? On the other hand, I can see a situation where, you know, some very smart district court judge is going through these things and sort of preemptively says, oh, I can see how that will be admitted. Now, that latter scenario, the court clearly passed on it without the defendant doing anything because the court anticipated the objection and resolved it. In the former scenario, the court didn't anticipate this objection. The court didn't even know there would be an objection. Well, certainly it's cleaner in the latter situation. I think in the former, in this context, given everything the district court did, it's fair to say that the district court passed on it. But even if it didn't, relief is required for plain error, and we've argued that separately in our brief. Rule 413 allows a court in a case in which a defendant is on trial for a sexual assault to admit evidence the defendant committed any other sexual assault. And this challenge proof here is not proof of a sexual assault. And the government really doesn't argue that it is. This is proof of other mistreatment. It's proof of emotional abuse, isolating behavior, controlling behavior, physical abuse. That is not evidence of sexual assault. And under the plain terms of Rule 413, it doesn't come in. And that makes it that shows you both error and that the error is plain. And the government claims the proof comes in for other reasons, but there's no persuasive argument for why. The government talks about how it shows why the woman stayed with Mr. Quinn. Isn't it similar to grooming in a child under Rule 414? And we have let in grooming evidence under Rule 414, right? It is. And we have let it in in that context. And it's not evidence of the actual sexual assault of the child. It's preliminary to putting the child in a position where you can commit that crime. Isn't this a lot like that? First you control them, and then you sexually assault them? No, it's not a lot like that. But I first want to get to the case I think you might have referred to, like Parole and Batten. And in those cases, there wasn't an argument about the threshold requirements, which there is here. And in Parole, for example, there was also expert testimony about grooming and its relationship to a sexual assault of a child. It's part of that whole context because grooming is something that is designed to be connected to the sexual assault. We don't have that connection here. There's certainly no evidence, evidentiary basis for that. We have mistreatment in other ways and then sexual assault. If you look, for example, at K.F., the alleged victim in this case, there was that isolating behavior and, according to her, patrolling behavior, things of that nature, while they were together, and no sexual assault. We have to at least, for that theory to work, be some evidence that connects it. And there isn't evidence other than just some speculation that that might be the case. There's lots of people who isolate people or who mistreat people who don't commit sexual assaults. And the notion that this is equivalent to grooming behavior is just not supported by anything evidentiary in this case at all. So even if there were some other basis for this evidence to come in, it couldn't be used for propensity. And Mr. Nguyen would have been entitled to instruction that it would have a limited use. The prosecution would not have been able to argue, as it did here in summation, that this was propensity evidence that showed a similarity between the claimed sexual assault here and those other cases. Specifically, what are you referring to? At least I found persuasive the argument that there is very limited use of the non-sexual assault evidence in this case. I mean, I don't think there was much in closing argument. And, I mean, there was some reference to the controlling behavior, but there wasn't a lot talked about in that context. And in the testimony, I don't recall there being a lot talked about. And so what are you referring to? Well, in the opening summation, there was the argument that the stories that these women had told were eerily similar, that the defendant was controlling them, isolated them from their friends and family. And more significantly, in the rebuttal summation, when the court said, when the prosecution said, when someone shows you who he is, believe him. Mr. Guinn has shown you that he is controlling. All three of these women told you that they couldn't talk to their families, they couldn't talk to their friends, and goes through that. And then says, believe that he is isolating. He isolated all three women. And then, and that's on page 453 of Volume 3. And then the prosecution ended by saying, the defendant has shown you who he is, he's controlling, he isolates his girlfriends, he takes what he wants despite being told no, believe that he is guilty, find him guilty. So I think that's very explicit use of this as propensity evidence. And that's what wouldn't have been permissible, even if this evidence were to come in for some other reason. And that's the argument part of that, which is not evidence in itself, but the evidence in which they testified as to controlling behavior, that I don't recall there being extensive, and unless you have it handy, I'm not asking you to look through the record, I can find it. But I mean, do you disagree that there was limited testimony about the controlling behavior? Yes, I do disagree. Okay. If you look at page 310 to 316 of the record, EB says, he was very controlling. And this is kind of how the prosecution leaves. It asks about the relationship with Mr. Gwin. He was very controlling and very isolating. She couldn't speak to anyone unless he was included or had initiated the conversation. She would get in trouble if she spoke to someone without his permission. He would tell her how stupid she was or scare her. He had to know everything about what she did. She had to have an answer for everything. And when they had their own apartment, he would be quick to anger because there was no one to risk and manhandle her. AF said he was controlling and abusive. And again, this is at the outset of the prosecution's questioning. He was controlling and abusive emotionally. In the end, he started to get more physical. He would not let her talk to family or friends. He had control of the aspect of life. He told her family hated her. Nobody loved her. He locked her inside of the camper when it was unusually hot day where there was no air conditioning. He chased her with So this was a significant part of the testimony of both of the other two, the 413 witnesses. How limited would the government's evidence had to be? In other words, how much would you allow before you would say foul? Well, it would have to be something that's closely connected to the sexual assault, which isn't here. And if they just want to say, well, he was in a relationship with these And the propensity evidence allows is limited to evidence of a sexual assault, not to this pre-existing or background behavior. It just doesn't come under Rule 413. As far as there being a probability the jury could believe the account that's given, don't those facts lead into that? In other words, if you take all of that out and you just say, Ms. Witness, on September 7th, did you have an encounter with the defendant? Yes, he threw me on the bed and so forth and so on. Is that enough for the jury to say we believe that? It is enough. I mean, there's lots of rapes that are not within a boyfriend-girlfriend context. And there could be the explanation of that day, of that event and how it happened. And that's sufficient for the jury to make that determination. And even if some of it could have come in for, even if some minimal amount would have been admissible, it wouldn't come in for propensity. And that's the big problem here. And there's a good chance this evidence here made a difference. There's a serious weakness in the prosecution's case. K.F. said that Mr. Nguyen videotaped some of this assault. At first she said it was videotaping of oral sex. She also said in her protective order petition that he videotaped through his phone parts, various parts of the assault. And there was none. He showed his phone to an officer the next day. And the FBI, years later when the federal government took over the case, did a forensic download of his phone. And there was no evidence of a video or of a deleted video. There was also no medical proof that showed this was a sexual assault. The jury had Mr. Nguyen's denials of the sexual assault. And this was admittedly a jealous relationship where there was an incident that K.F. agreed happened, where she saw a red truck and was jealous about that and thinking it belonged to a woman. And Mr. Nguyen gave, through his statements, gave much more explicit testimony about that. Wasn't there an argument in your briefing to the effect that there's reason to disbelieve the other two witnesses? And if there is reason to disbelieve them, how does that play into the question of whether they would have affected the outcome here, a reasonable probability they would have affected the outcome? There's a reason to disbelieve them on the sexual assault because one of them didn't put it in the protective order when listed why you requested it. There was a box for the victim of rape. She didn't check that. Well, why is it there also reason to disbelieve their argument about the controlling aspect? Because there was no contrary evidence about the controlling aspect. There was with E.V. not checking the box. With A.F., she said she didn't see red flags in the relationship and moved with him hours away to a pig farm of his aunt's, despite there being this harrowing rape that she described that would be an obvious red flag. So for this reason and for the vouching and if this court doesn't find that there's sufficient evidence or sufficient prejudice based on this error, there certainly is in combination with the vouching error and the denigration of the role of the defense counsel. And I'll save the remainder of my time for rebuttal. Thank you. Thank you. Good morning, your honors. May it please the court, Jessica Wright on behalf of the United States. The district court did not plainly err in admitting the non-sexual evidence from Mr. Gwynn's priority victims under Rule 413. This evidence that Gwynn now objects to provided context that the jury needed to understand those victims' testimony. Even if this evidence was admitted in error, Mr. Gwynn has not demonstrated an impact on his substantial rights. Starting with the error piece, it's important to understand Mr. Pincus mentioned that there are many cases where this Rule 413 evidence comes up not in the context of a dating relationship. In this case, all of the alleged rapes were in the context of a dating relationship. And therefore, for the reasons that this court has discussed, there's no way to present this evidence to the jury without some broader context of the relationship. The defense counsel in his opening statement to the jury made clear that his theory of the case is that all three women were lying. That K.F. made up these allegations and she went back and she recruited Mr. Gwynn's prior victims. Well, isn't the issue whether it comes in under 413 and can be used for propensity or whether it comes in some other context, as you say, to provide the background necessary and can't be used for propensity? Here, if the district court admitted this evidence under Rule 413 as context, it could be used for propensity. Well, I guess what Mr. Pincus would argue is that doesn't comport with the plain language of Rule 413 that allows for admission of evidence of sexual assault for propensity and that this is not evidence of sexual assault. It's not evidence of sexual assault. However, Rule 413 is silent as to how this context evidence is treated. And in cases where this court has found plain error based solely on the text of a statute or a rule or a sentencing guideline, the rule is extremely explicit that what was done was not permissible. Well, before you were arguing error and now you've switched to even if there is an error, it's not plain. Is that right? Yes, you're right. Okay. Well, but the rule defines what sexual assault is. And so, I mean, if you're in a situation where it says we allow in sexual assault evidence, it defines what sexual assault is. Why doesn't it naturally follow that these things aren't sexual assault? Therefore, they're excluded. I mean, it is plain. Here, the court was considering this evidence as context. It's intrinsic to the sexual assault evidence. This is no different than the analysis that district courts commonly do when assessing 404B in general. Before assessing whether the evidence is offered for a proper purpose under 404B, a district court first considers whether those other acts are intrinsic. Here, the context evidence on the broader relationship was essentially intrinsic to Rule 413. And how is that? I mean, you say it would be impossible to do otherwise. Well, why couldn't they just have evidence that they were in a boyfriend-girlfriend relationship, these prior victims? I mean, full stop. I mean, you don't need to have this stuff about controlling nature to establish that there was a romantic relationship and thus this was like the situation that he was prosecuted for here, do you? I mean, I don't understand why that context would be necessary. In this case, the context was necessary because Mr. Gwynne's attorney in his opening statement explained that the jury could not believe these prior victims because they did not report the rapes and they stayed with Mr. Gwynne after the sexual assaults began. So is that it? The context is for believability, to bolster believability of the witnesses? That's part of it. Another piece is it allowed the jury to compare this evidence to what KF described in order to determine how much weight, if any, to give these prior victims. That sounds like 404B prior bad acts evidence. I mean, and again, my point would be some evidence, there's carved out a very narrow exception under 413 and 414 where you can look at this stuff for propensity reasons, but typically that's not the rule. And so if it wasn't proper for it to come in under 413, then it probably couldn't have been used for propensity. The government did advance a 404B argument before the district court. However, because the district court ruled solely on 413 and the defendant did not object, this issue was not raised. However, even in the context of admitting 404B evidence, courts regularly have to decide where to draw the line on that evidence. For example, if a district court determines in a bank robbery case that a prior bank robbery is admissible under 404B for identity or common scheme or plan, it still has to determine what evidence can be introduced. Is it just the fact of the prior robbery? How much evidence can be presented? And ultimately, it's such a fact specific question, but this is why it needs to be raised in the district court at the trial for a determination to be made. I don't think anybody's suggesting that there couldn't be a theory where this evidence could have been introduced. The question is whether that theory was actually propounded. And if it was a non-propensity way of introducing the evidence, then there needed to be a limiting instruction. And that just wasn't here. So, I mean, the context, you know, you can drive a Mack truck through a context argument, as you see in the context of we need to know why the officer showed up at this event. Well, you could say a lot of crazy stuff as context for why officers showed up at an event, and that wouldn't necessarily be permissible. And so, I guess the question is not whether there isn't a role for this evidence. The question is whether 413 allowed for that. I mean, there was no other theory under which this was presented to the, well, you presented it, but the district court didn't rule on it. That's correct, Judge. It was admitted under 413. Defense would have been entitled to a limiting instruction had he requested one. He did not. He requested a Rule 413 limiting instruction. His requested instruction was given. So, is the value of the evidence bad character? And the jury says, there are some holes in these accounts that are given by the witnesses, but he's a bad guy. He sounds like someone who might do that. This theory doesn't make logical sense, and it's for a couple of reasons that this court asked Mr. Pincus in his argument. First, if the jury did not believe the prior victim's testimony regarding the sexual assault, it makes no sense that the jury did believe this evidence that Mr. Quinn was a bad boyfriend. It could have tipped the balance. They could have been uncertain about whether the sexual assault occurred, and then when they heard he grabbed my wrist, he controlled me, they're like, we know someone just like that. This fits the puzzle. You did it. In other words, you offered the evidence for a reason. The re's no way that the jury convicted Mr. Quinn because they heard evidence that he made a prior victim shower with him. What about the cattle prod? I mean, that's a little bit shocking, isn't it? That was introduced in the context of a prior victim protective order. And I will note, when it comes to the impact on Mr. Quinn's substantial rights, he thoroughly and effectively cross-examined these prior victims. He asked her quite a bit about the cattle prod incident, intending to show the jury that he was joking, that Mr. Quinn was laughing when this event occurred. Not only did he ask the prior victim about it on cross-examination, but in his closing argument, he raised that cattle prod issue to convey to the jury, look, his behavior was misguided, the relationship was immature, but he didn't take this seriously. And I think in conjunction with the strong evidence of Mr. Quinn's guilt, cannot overcome that hurdle to show a different outcome in this case. So you're saying it didn't affect his substantial rights? That's correct, Judge. The jury heard from K.F. as to the assault in detail. Her actions immediately after the assault corroborated her story. She immediately went to the hospital. She reported to the police. She had a SANE exam. She sought a protective order. In contrast, the jury heard from Mr. Quinn three times. He did not testify, but they had text messages from him, an interview by local law enforcement when he was served with the protective order, and then an interview by the FBI. And Mr. Quinn's story of what happened that night changed every single time. The first time in the text messages, he's confused. He doesn't remember how he got home. When he was interviewed by local law enforcement, he said that they went home together and had regular sex. When interviewed by the FBI two years later, he's providing extensive details about the sex that they had that night. He is telling the FBI that he would be shocked to hear if another woman made similar allegations, despite the fact that he had been served with a protective order in which one of the prior victims described a violent anal rape. And at the same time, the defense theory of the case is that all of these women were lying, that they fabricated these stories, but there was evidence that none of the three women had spoken about these sexual assaults. Yet the sexual assault behavior that both sides would agree was properly admitted under Rule 413 was very similar when they described Mr. Quinn holding them down, restraining them, the methods that he would use. Are you on prong three? Is that what you're talking about now? Yes, Judge. His substantial rights. But there's something that makes me a little uncomfortable, and I'm not saying it's unusual, which is the government and district court is saying, we need this evidence, and come up to the appeal court and say, oh, that didn't really matter. But I can see where it did matter. In conjunction with Mr. Quinn's attorney's cross-examination of the victim, his forceful closing argument, the jury did not believe his theory of the case that these three women made up these sexual assaults. And the evidence that he raises here on appeal regarding, for example, the cell phone video, which was reason to doubt, he forcefully pressed that argument at trial. He asked KF about it. He told the jury it didn't make sense. The government presented to the jury the idea that if KF were really lying and she made this whole thing up, why would she say there was hard evidence on a phone? The jury chose to believe what it chose to believe, but it had full opportunity to consider these defense arguments at the trial. Go ahead. One argument that I think was raised by you in connection with the Prom 3 related to the jury instruction, limiting instructions. I'm puzzled by why that really helps you. I mean, it was not a limiting instruction that was directed specifically at non-assault testimony, and it spoke in terms of, I think it used language of, other offense. You should not consider evidence of another offense on its own is not sufficient to prove a defendant guilty. So I guess what I derive from that is two things. One, it's not connected to this specific testimony, and two, it leaves open the door that it may be considered. It's just not going to be sufficient for conviction, and if it's considered in connection with conviction, that's not helpful in terms of reducing the prejudicial effect of 413 propensity evidence, right? I would agree with this court that the limiting instruction in this case is not the reason why it didn't impact Mr. Gwynn's substantial rights. The real reason is the overwhelming evidence of his guilt, the proper 413 evidence, and the fact that he had an opportunity to mitigate any potential prejudice on cross-examination and in closing arguments. Thank you. One minute, Mr. Pincus. I'll wait. Okay. Thank you.